We will now turn to the first matter on calendar, which is the bail motion United States v. Milne. May it please the court. My name is Andrew Bowman and I represent the Defendant Appellant John Milne. Your Honor, this is a motion for state pending appeal. We believe and we submit that we have a strong likelihood of success on merits. The advisory guideline range was three to nine months. The sentence was the maximum of two years. Mr. Milne had not been involved in crime since the original, which was 15 years ago. The district court made a finding that no fraud had been committed by him during the course of supervised release and she but more sophisticated with respect to the original offense. But he was punished for that. He didn't just get a slap on the wrist. He received a 27-month sentence, three-year supervised release. He paid a million dollars at the time of sentencing. He paid $559,000 during the term of supervised release. My understanding is that he agreed to disgorgement of $6 million and obtained 18 continuances while he represented that he was going to be able to at least either pay it or at least make further payments. I guess the court ran out of patience as courts do after 18 continuances. I think what we're looking here is a failure and the court made a specific finding that the defendant did not fraudulently represent that he was going to make payments. In addition, at the time of the hearing, there was a representation made by counsel that over a million dollars would be paid within two weeks and the court basically said, look, I'm not going to allow any further continuances. That would have been the 19th continuance. It would have been, Your Honor, but it would be different. It would be different if somebody were found to have made fraudulent representations to the court. The court didn't label your client a fraudster, but the circumstances are that he wasn't making these payments while he was living a lifestyle that was inconsistent with disgorgement. To the extent that we review the district court's findings here deferentially, I'm not sure what your claim of error is. I understand you want a different result here, but what do you think is erroneous? The court did not give a rational basis for its finding that a maximum sentence was the appropriate sentence here. All the court did really was exercise frustration. By exercising frustration, she said, look, I'm going to give you the maximum sentence, and that's what she did. The government says that the sentence is not shocking, but of course it was the maximum sentence permitted by law. Which was? Two years. Two years, right. I mean, this is not exactly as if she put him in jail for 20 years. This is when despite representation after representation that disgorgement would be made, it was not, and your client was driving a luxurious car, spending money on other things that go beyond what most people have as their lifestyle. Well, he did pay $559,000 during supervised release, Your Honor, which is not an insignificant . . . Nevertheless, he is also spending money on what could reasonably be viewed as luxury items rather than making disgorgement. Well, I would respectfully submit that we don't have debtor's prison in this country, and the mere failure needs to be accompanied by more . . . This is not debtor's prison where he's being put in jail because he's unable to pay. He's being put in jail because he was supposed to pay, and he didn't. He used money that he should have been disgorged for luxurious items. So how is this . . . how does this warrant bail pending appeal? Even if, even if he shouldn't have spent as much money on living expenses, the difference would not have been so dramatic as to have enabled him to pay the full $6 million. Why did he agree to pay $6 million in disgorgement if he didn't have it? It seemed like a good idea at the time. Well, I think he believed that he could. I think he believed that he could pay it. But as life happened and events occurred, he went to prison for 27 months, and he wasn't able to do it. It wasn't willful. It wasn't fraudulent. It happened that way. Disgorgement is usually the giving back of what you have in hand. Right. Well, he didn't have it at the time. Yet he manages to spend $17,000 at Hermes, wherever that is. Look, his expenses were high. I don't dispute that. Well, sorry. His expenditures were high. Yes. Were they actual expenses? Pardon me. Yes. His expenditures were high, but the difference between what would have been reasonable and what he spent would certainly not have made up $1 million. That's the problem. The district court wasn't penalizing him for failing to disgorge in a particular amount. It was of the view that having promised to make disgorgement, he took money that should have been disgorged, even if you don't think $17,000 at Hermes, which I'll explain to Judge later. I don't think they sell anything at Hermes that doesn't qualify as a luxury item. So, you know, the judge is frustrated by this, but not frustrated in an emotional sense, frustrated in a sense that the law is being flouted. Well, I think that Your Honor has made an excellent point, and that was this was a sentence that was motivated by frustration. This was a sentence that was not respectfully rational. This was a sentence that was unreasonable under the circumstances. We've only used one example, and again, I think you're refusing to look at the fact that this is a man who's coming and repeatedly asking the And then going out and spending money on luxury items. The court could reasonably conclude in those circumstances that the disgorgement order was being willfully disobeyed, and conclude that that warranted the sentence. Here's the issue that I have with respect to what the judge said. She said, I find no fraud in Mr. Milne's representations that he would make payments. I mean, she found that he never intended to lie to the court about his intention to make payments. I mean, she made a specific finding in that respect. So I would respectfully submit that what we're talking about here is failure, and failure should not amount to a maximum sentence. Thank you. I'm sorry. And that's the basis for your thinking that you have a culpable issue on appeal, right? And the fact that there was no reason with respect to specific deterrence or general deterrence to impose a maximum sentence in this case. I mean, the man hadn't committed a crime in 15 years. I also wanted to point out to the court that he is a Canadian citizen, that he has been a permanent resident since 1994. He lives here in Manhattan. He last entered the United States from Toronto in 2008, and a sentence of more than a year is an aggravated felony, and an aggravated felony will subject him to deportation when he has made his life here in Connecticut for nearly 25, I'm sorry, in Connecticut and New York. Doesn't that consequence ensue anyway based on his original sentence? It didn't happen then. It didn't happen. There was no deportation at that time. Well, it didn't happen, but it could happen based on that. I think anything could happen today. Yes, Your Honor. Thank you. Thank you, Your Honor. May it please the Court, Mike McGarry from the U.S. Attorney's Office for the United States of America. I submit, Your Honor, that Judge Hall, Chief Judge Hall, made no error in her revoking the supervised release of Mr. Milne. The Court, all the judges seem to have their finger on this case. I will point out, as your judge mentioned, this was discouragement. At the time of sentencing, Mr. Milne represented to $12.1 million. It was established, and we submitted documents supporting it, that from the crime itself, he made $12.1 million. He asked for time at the time of the plea to unwind his investments so that he could pay back the money, and then Judge Burns ordered that he disgorge $6.25 million by the end of the term of supervised release. That was made a special condition of supervised release, and it was in the plea agreement. Does the prosecution have any reason to believe that he has this money and could just write a check for it? The financials, as the Court may know from reading the violation report, one of the violations was that the financials that were provided were somewhat opaque. Judge Hall did not find that to be an additional violation, but it is difficult to actually figure out what Mr. Milne owns because he fancies himself a venture capitalist where he owns ownership interests and equities in various private holdings. He says they're worthless, or they're not marketable. Understood. However, at the time of the sentence, he said he had $22 million. You could have $22 million in assets that are not marketable or liquid. This is true. However, as Judge Radji pointed out, it's not because he didn't meet the $6.25 million threshold that Judge Hall revoked the supervised release and sentenced him to two years. It's because he went years and years of making no payments, also while signing stipulations and motions for continuances, asking for more time so that he could make substantial payments and then would make no substantial payments. Contrary to what counsel said, Judge Hall did not make a finding that there was no fraud. She said she was not making a finding that there was fraud, which I think is a subtle distinction but an important one. She was not making a finding that he did not . . . Why is that an important distinction? Because what she's basically saying is, I'm not making a judicial finding that you committed an additional crime by lying to the court, which would be, presumably, an additional crime that he could be prosecuted for. But that means that she considered that he did not lie to the court, that he intended to come up with this money somehow. Well, he told the court, both Judge Burns and Judge Hall, there will be payments coming, there will be payments coming, there will be payments coming, and they were never made. So . . . We don't jail people for riding in a Mercedes-Benz, helping get our mess. Well, we do jail people for violating their conditions of supervisory release repeatedly, and there are two cases, the Fleming case and the Hargrove case, which I think are on point. In both of those cases, the guideline range was five to 11 months. In the Fleming case, the defendant tested positive for multiple occasions of using marijuana and admitted to using marijuana. Nevertheless, Judge Gershon went above the guideline range and gave, I believe, two years in that case. In the Hargrove case, the defendant tested positive for using drugs, asked for an adjournment so that he could be allowed to enter treatment, which is somewhat analogous. However, he did not enter the treatment and then came back and Judge McMahon gave him, I believe, thirty-six months in that case. I think this Court said in that case that the judge is not bound in any way by the sentencing guideline range and it's solely a function of the district court's discretion. I think in this case, both Judge Burns and Judge Hall gave the defendant numerous opportunities to in essence cure his violation. Now, he was never going to cure the travel without permission, which is also another violation, and instead of curing the violation in essence by making some type of payments, some type of good faith payments, he had payments, as the Court has alluded to, of thousands of dollars. I think he has monthly rent of $11,000. He lives in Manhattan. He does, but I lived in Manhattan, Your Honor, and there are apartments for less than $11,000. He also had . . . We actually have all of the records and we have all of the affidavits. Thank you. Thank you. And if there are no other questions, I thank you, Your Honor. We will reserve decision.